EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Orlando Feliciano<br><br>Peticionario<br><br><br>v.<br><br>Luxury Hotels International of Puerto Rico Inc., h/n/c The Ritz Carlton San Juan Hotel Spa & Casino<br><br>Recurrido | Certiorari<br><br>2022 TSPR 133<br><br>210 DPR \_\_\_\_ |

Número del Caso:  CC-2020-0542


Fecha: 26 de octubre de 2022


Tribunal de Apelaciones:

      Panel IV


Abogado de la parte peticionaria:

      Lcdo. José Miguel Rodríguez


Abogados de la parte recurrida:

      Lcda. Ivy Mercado Ramos
      Lcda. Raquel Román Morales


Materia: Sentencia con Opinión de Conformidad y Opinión Disidente


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Orlando Feliciano<br><br>Peticionario<br><br>v.<br><br>Luxury Hotels International of Puerto Rico Inc., h/n/c The Ritz Carlton San Juan Hotel Spa & Casino<br><br>Recurridos | CC-2020-0542 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de octubre de 2022.

Examinado el recurso de *Certiorari* presentado por el peticionario, así como el *Alegato* sometido por la parte recurrida, se confirma la *Sentencia* emitida por el Tribunal de Apelaciones por encontrarse este Tribunal igualmente dividido, según dispuesto en la Regla 4(a) de nuestro Reglamento, 4 LPRA Ap. XXI-B.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García emitió una Opinión de Conformidad a la cual se le unen la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Kolthoff Caraballo y Feliberti Cintrón. El Juez Asociado señor Estrella Martínez emitió una Opinión Disidente a la cual se le unen los Jueces Asociados señores Martínez Torres y Colón Pérez. La Jueza Presidenta Oronoz Rodríguez disintió sin opinión escrita.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Orlando Feliciano<br><br>Peticionario<br><br>v.<br><br>Luxury Hotels International of Puerto Rico Inc., h/n/c The Ritz Carlton San Juan Hotel Spa & Casino<br><br>Recurrido | CC-2020-0542 | *Certiorari* |

**Opinión de Conformidad emitida por el Juez Asociado señor Rivera García a la cual se le unen la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Kolthoff Caraballo y Feliberti Cintrón.**

En San Juan, Puerto Rico, a 26 de octubre de 2022.

La Sentencia que hoy emitimos valida la trascendencia, importancia, y vitalidad de los acuerdos transaccionales otorgados en materia de derecho laboral. Conscientes del alto interés público que acarrea este tema, nuestra intervención juega un rol aún mayor.

En el presente caso, se nos brindó la oportunidad, desaprovechada por ciertos miembros de este Foro para resolver, **si nuestro ordenamiento jurídico permite el que un empleado que expresamente reconoce y acepta que fue despedido por justa causa, otorgue un contrato de transacción —*materializada su cesantía*— a cambio de una indemnización voluntaria por parte de su ex patrono.**

Por los fundamentos que esbozo a continuación, sostengo que el Artículo 9 de la *Ley Sobre Despidos Injustificados* (Ley Núm. 80), *infra*, **no prohíbe el perfeccionamiento de un contrato de transacción ante el reconocimiento expreso de un despido por justa causa**. Es evidente, que, al realizar este análisis, no solo validaríamos un acuerdo transaccional que estipula un despido justificado, sino que, además, atemperaríamos el desarrollo de esta figura en nuestro ordenamiento jurídico. Recordemos que, ante el constante cambio social, tecnológico y cultural que enfrentamos día a día, no debemos rehuir de soluciones jurídicas **permisibles** como son los contratos de transacción, máxime cuando estos reúnan todos los elementos indispensables conforme a nuestro estado de derecho vigente.

Tristemente, los compañeros disidentes abandonan una poderosa herramienta jurídica, que promueve e incluso anticipa la disolución de disputas legales mediante el acuerdo mutuo de los otorgantes. Además, ignoran por completo la clara intención de la Asamblea Legislativa respecto a este tema. Así pues, por estar conteste con la determinación del foro primario e intermedio, consigno mi conformidad.

# I

El Sr. Orlando Feliciano (señor Feliciano o peticionario) laboró para Luxury Hotels International of Puerto Rico Inc., h/n/c The Ritz Carlton San Juan Hotel Spa & Casino (Luxury Hotels o recurrido) desde el 1 de noviembre de 1997 hasta el 4 de noviembre de 2016.[1] Como resultado de una **reorganización y reducción de personal**, el peticionario fue cesanteado de su empleo ante la eliminación de la plaza que ocupaba en la compañía. En su último día como empleado, Luxury Hotels le remitió al señor Feliciano un Acuerdo Confidencial de Separación y Relevo General (Acuerdo) del cual se acusó recibo para esa misma fecha.[2] En lo pertinente, las partes pactaron lo siguiente:

> 1. En consideración a la firma y estricto cumplimiento con los términos de este Acuerdo, y sujeto a que la Compañía reciba este Acuerdo debidamente fechado y firmado por Feliciano Padilla, y siempre y cuando Feliciano Padilla no revoque este Acuerdo según provee el párrafo número 13, la Compañía acuerda hacer un pago especial a Feliciano Padilla por la cantidad de DIEZ Y NUEVE MIL SEIS CIENTOS SESENTA Y UN DOLARES CON CUATRO CENTAVOS ($19,661.04), al cual se le dará el trato contributivo que se describe en el párrafo 2 de este Acuerdo, en transacción por todas las reclamaciones, conocidas y no conocidas, alegadas y no alegadas, incluyendo, sin que se entienda como una limitación, reclamaciones por despido injustificado y su correspondiente mesada bajo la Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a *et seq.*, salarios dejados de

---

[1] Apéndice de la petición de *certiorari*, *Acuerdo Confidencial de Separación y Relevo General,* págs. 75-84.
[2] Íd.

devengar, salarios futuros, reinstalación, bonos y beneficios, daños reales, físicos, emocionales o por concepto de angustias mentales, daños punitivos y honorarios de abogado. El pago de la suma acordada en este Acuerdo será efectuado después de que Feliciano Padilla reciba una orientación por un representante autorizado del Secretario del Trabajo y Recursos Humanos en torno al contenido, significado y repercusiones de la firma de este Acuerdo, y no antes de haber transcurrido el período de revocación de siete (7) días establecido en este Acuerdo, sin que el Acuerdo sea revocado. […]

4. Feliciano Padilla **expresamente reconoce que la terminación de su empleo respondió a una reorganización y reducción válida de personal en la Compañía, conforme a los criterios establecidos en los artículos 2 y 3 de la Ley Núm. 80 del 30 de mayo de 1976, razón por la cual expresamente reconoce que no tiene derecho a recibir compensación alguna al amparo de lo dispuesto en dicho estatuto.**[3] (Énfasis suplido).

De igual forma, la compañía **expresamente le recomendó al señor Feliciano que consultara con un abogado antes de proceder a firmar el mismo.** A tal efecto, el 15 de diciembre de 2016, el peticionario recibió una orientación sobre el contenido y alcance acuerdo, y sobre la importancia de que tomara una decisión voluntaria e inteligente al suscribir el mismo.[4] Consecuentemente, la Lcda. Lisa Michelle Rosado Báez, abogada del Negociado de Asuntos Legales del Departamento del Trabajo y Recursos Humanos **certificó mediante carta**

---

[3] *Alegato del Recurso de certiorari.*
[4] Apéndice de la petición de *certiorari*, Re: *Acuerdo Confidencial de Separación*, pág. 85.

**la orientación brindada al peticionario.**[5] **Luego de esto**, el 17 de diciembre de 2016, el señor Feliciano firmó el *Acuerdo*.[6]

No obstante, **a pesar de haber firmado el acuerdo voluntariamente**, el 1 de noviembre de 2019 el señor Feliciano presentó una *Querella* contra su expatrono.[7] En síntesis, adujo que fue despedido sin justa causa por razón de su edad y raza.[8] Además, expuso que el recurrido no le brindó la indemnización a la que tiene derecho cónsono con la Ley Núm. 80 de 30 de mayo de 1976, conocida como *Ley Sobre Despidos Injustificados*, según enmendada.[9] Añadió, que a pesar de que Luxury Hotels le informó que su despido era el resultado de una reorganización y reducción de personal, esta tuvo la "intención de discriminar por edad y raza de manera injusta y contrario a la ley, moral, y orden público".[10] Además, arguyó que Luxury Hotels mantuvo empleados de menor antigüedad posterior a su cesantía.[11]

Por su parte, el 5 de diciembre de 2019, Luxury Hotels presentó una *Solicitud de Desestimación y*

---

[5] Apéndice de la petición de *certiorari*, Re: Acuerdo Confidencial de Separación, pág. 85.

[6] Apéndice de la petición de *certiorari*, *Acuerdo Confidencial de Separación y Relevo General,* pág. 83.

[7] Apéndice de la petición de *certiorari*, *Querella*, págs. 1-3. La parte querellante solicitó el procedimiento sumario establecido en la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961(32 LPRA sec. 3118 *et seq.*).

[8] Íd.

[9] Íd.

[10] Íd.

[11] Íd.

*Contestación a la Querella*.[12] En específico, alegó que el peticionario fue despedido por justa causa como resultado de una reorganización y reducción de personal.[13] A esos fines, argumentó que al firmar voluntariamente el *Acuerdo*, el señor Feliciano se comprometió a no presentar reclamación alguna contra su ex patrono relacionado a la terminación de su empleo, y además, admitió que no tenía derecho a la indemnización que provee la Ley Núm. 80, *supra*. Así, resaltó que este aceptó un pago voluntario de $19,661.04 en virtud de todo lo anterior. De este modo, concluyó que el despido no fue arbitrario ni caprichoso, sino que respondió a los mejores intereses de la compañía y estaba relacionado con el buen y normal funcionamiento del negocio.[14]

Por consiguiente, ante la existencia del acuerdo, como defensa afirmativa, Luxury Hotels solicitó la desestimación con perjuicio de la reclamación judicial. Más adelante, el 2 de enero de 2020, el señor Feliciano presentó una *Moción en Oposición a Desestimar.* En esta, argumentó que el *Acuerdo* era nulo, por ser este contrario a la moral y al orden público cónsono a lo establecido en Orsini García v. Srio. de Hacienda, 177 DPR 596 (2009). A

---

[12] Apéndice de la petición de *certiorari*, *Solicitud de Desestimación y Contestación a la Querella*, págs. 4-11.
[13] Íd.
[14] Íd.

su vez, sostuvo que recibió una indemnización inferior a lo correspondiente mediante mesada.[15]

Luego de varias incidencias procesales y tras considerar los argumentos esgrimidos por las partes, el 13 de mayo de 2020 el Tribunal de Primera Instancia emitió y notificó una *Sentencia* en la que **desestimó con perjuicio las reclamaciones del peticionario**. De las determinaciones de hecho realizados por el foro primario se desprende que al señor Feliciano se le proveyó un *Acuerdo Confidencial de Separación y Relevo General* para su consideración, y que, tras ser orientado por un representante legal del Departamento del Trabajo, este lo firmó libre, voluntaria e inteligentemente. Además, señaló que el peticionario se comprometió a no presentar reclamación alguna contra Luxury Hotels en relación con su cesantía y que este admitió expresamente haber sido despedido por justa causa.

En ese sentido, el foro primario determinó que el acuerdo voluntario entre las partes era totalmente válido y, consecuentemente, concluyó que el despido respondió a una reorganización y reducción legítima de personal, razón por la cual el peticionario no tenía derecho a ser compensado.[16] A esos fines, el Tribunal de Primera

---

[15] Apéndice de la petición de *certiorari*, *Moción en Oposición a Desestimar*, págs. 12-14.
[16] Apéndice de la petición de *certiorari*, *Sentencia*, págs. 28-35.

Instancia concluyó que <u>Orsini García v. Srio. de Hacienda</u>, 177 DPR 596 (2009), y <u>Vélez Cortés v. Baxter</u>, 179 DPR 455 (2010) no son aplicables al caso de autos.[17]

Ahora bien, es importante señalar, además, que, **el foro primario esbozó que aún si el querellante hubiese sido despedido injustificadamente, la Ley Núm. 80, *supra*, permite que las partes ejecuten un contrato de transacción sobre la indemnización de la mesada, siempre y cuando dicho acuerdo se concretice luego del despido.** En específico, el Tribunal de Primera Instancia expuso que mediante la enmienda a la Ley Núm. 80, *supra*, por virtud de la Ley Núm. 4-2017,[18] la Asamblea Legislativa dispuso lo siguiente:

> Será nulo cualquier contrato, o parte del mismo, en que el empleado renuncie a la indemnización a que tiene derecho de acuerdo a las secs. 185a a 185n de este título. **Sin embargo, una vez ocurrido el despido o la notificación de la intención de despedir, el derecho a la indemnización dispuesta por las secs. 185a a 185n de este título podrá transigirse, siempre y cuando estén presentes todos los requisitos de un contrato de transacción válido.** (Énfasis suplido).[19]

Inconforme, el 16 de junio de 2020, el señor Feliciano instó un recurso de Apelación ante el Tribunal de Apelaciones.[20] En esencia, arguyó que su despido fue

---

[17] Íd.

[18] *Ley de Transformación y Flexibilidad Laboral de Puerto Rico,* 29 LPRA sec. 121a.

[19] Apéndice de la petición de *certiorari*, *Sentencia*, pág. 34. 29 LPRA sec. 185i.

[20] Apéndice de la petición de *certiorari*, págs. 36-51.

injustificado, lo cual lo hace acreedor del derecho irrenunciable a la mesada cónsono a lo dispuesto en la Ley Núm. 80, *supra*.[21] Añadió, que el *Acuerdo* otorgado es nulo por ser este contrario a la ley, la moral y el orden público.[22] Además, expresó que, ante la presentación de una moción de desestimación por parte del querellado, el foro intermedio venía obligado a tomar como cierto los hechos bien alegados en la demanda y considerarlos de la manera más favorable a favor de la parte demandante.[23]

En torno a la apreciación de la prueba, adujo que el foro primario erró al invertir el peso de la prueba a favor del querellado en claro incumplimiento con lo dispuesto en el artículo 11(a) de la Ley Núm. 80, *supra*,[24] y lo establecido en la Regla 302 de las Reglas de Evidencia de Puerto Rico.[25] De este modo, argumentó que aún existe controversia sustancial sobre la existencia de un contrato válido y un despido justificado.[26] Finalmente, concluyó que el foro primario erró al hacer formar como parte de su análisis un estado de derecho enmendado con posterioridad al despido del querellante.[27]

Posteriormente, el 30 de septiembre de 2020, el foro intermedio dictó *Sentencia* mediante la cual confirmó la

---

[21] Íd.
[22] Íd.
[23] Íd.
[24] 29 LPRA sec. 185k.
[25] Apéndice de la petición de *certiorari*, págs. 36-51. 32 LPRA Ap. VI, R. 302.
[26] Apéndice de la petición de *certiorari*, págs. 36-51.
[27] Íd.

determinación del foro primario.[28] A tal efecto, expuso que no se podía ignorar el hecho irrefutable de que el apelante firmó y suscribió un *Acuerdo* a través del cual expresó que su despido fue justificado a consecuencia de la reorganización de la empresa y la eliminación del puesto que ocupaba. A su vez, señaló que como parte del *Acuerdo* este recibió por parte del recurrido una compensación por $19,661.04. En ese sentido, esbozó que, como si no fuese suficiente la firma, el señor Feliciano recibió la orientación de una abogada del Departamento del Trabajo y Recursos Humanos, la cual le explicó sobre el contenido y alcance jurídico del *Acuerdo* que suscribiría. No obstante, este optó por obligarse contractualmente a no presentar reclamación judicial alguna en contra del querellado en lo que a su despido respecta.

Además, en síntesis, señaló que en el caso que nos ocupa el peticionario interpretó erróneamente lo resuelto en Orsini García v. Srio. de Hacienda, *supra*, toda vez que, al tratarse el caso ante su consideración sobre un despido justificado, el derecho a la mesada no tiene cabida. Añadió, que en este caso hubo un acuerdo

---

[28] Apéndice de la petición de *certiorari*, *Sentencia del Tribunal de Apelaciones*, págs. 87-102.

transaccional mediante la cual se proveyó una indemnización ante ello, no una renuncia a la mesada.[29]

En cuanto al error referente a que el foro primario actuó incorrectamente al validar el *Acuerdo* con la aplicación de un derecho posterior al vigente al momento de los hechos, el Tribunal de Apelaciones determinó que si bien es cierto "que las referencias que realizó el foro primario corresponden a un derecho posterior al vigente al momento de los hechos del caso ante nos, dicha actuación no conlleva automáticamente a revocar [el] dictamen apelado".[30] De esta forma, indicó que la mención sobre las *Guías emitidas por el Departamento del Trabajo y Recursos Humanos*; y la discusión, interpretación y análisis del artículo 9 de la Ley Núm. 80, *supra*,[31] enmendado por la Ley Núm. 4-2017 conocida como la *Ley de Transformación y Flexibilidad Laboral de Puerto Rico*, no tuvieron el efecto de invalidar el resto del análisis y desviar lo resuelto por el foro primario.[32]

Por lo tanto, el foro intermedio determinó que los casos de Orsini García v. Srio. de Hacienda, *supra*, y Vélez Cortés v. Baxter*, supra,* eran inaplicables a los hechos del caso de epígrafe. Asimismo, reiteró que en Orsini García v. Srio. de Hacienda, *supra*, pág. 627, este

<hr />

[29] Íd., pág. 100.
[30] Íd.
[31] 29 LPRA sec. 185i.
[32] Apéndice de la petición de *certiorari*, *Sentencia del Tribunal de Apelaciones*, pág. 100.

Tribunal resolvió que cónsono a la Ley Núm. 80, *supra*, es nulo cualquier contrato en el que el empleado renuncie a la indemnización a la que tiene derecho. Añadió que, en cuanto al caso de Vélez Cortés, *supra*, "**se reitera que el derecho a la mesada es irrenunciable solo cuando el empleado es despedido sin justa causa**". (Énfasis suplido). Específicamente, razonó que en ambos escenarios se declararon nulos "los contratos en los que el empleado renuncia a su derecho a la mesada cuando es despedido sin justa causa".[33] Por ello, el foro intermedio concluyó que el caso traído ante su consideración era contrario a los preceptos antes discutidos. Finalmente, determinó que el señor Feliciano no tiene derecho a una mesada que por ley no le corresponde.

Inconforme aún, el peticionario acude ante nos mediante un recurso de *Certiorari.* En virtud de este, señaló los errores siguientes:

> Erró el TA al confirmar la Sentencia del TPI desestimando con perjuicio en su etapa inicial sin haber tan siquiera descubrimiento de prueba, la reclamación de mesada y otras por la vía (sic) sumaria del apelante, aunque a tenor con la Ley Núm. 80 de 30 de mayo de 1976 enmendada el 21 de mayo de 1982 Luxury Hotels Intl' of PR Inc tenía el peso de la prueba para acreditar la justificación del despido.

> Erró el TA al confirmar la Sentencia del TPI que invierte el peso de la prueba a favor de Luxury Hotels Intl' of PR Inc. y en su consecuencia desestimar la reclamación de mesada del apelante.

---

[33] Íd., págs. 100-01.

> Erró el TA al confirmar la Sentencia del TPI que valida un acuerdo nulo basandose (sic) en nuevas leyes, desiciones, (sic) e interpretaciones administrativas con vigencia posterior a los derechos del presente caso, sabiendo que el estado de derecho aplicable era distinto al actual. No ver los hechos alegados de la forma mas (sic) favorable al apelante y concederle a éste el beneficio de toda inferencia que razonablemente se podía derivar de dichas alegaciones.

Por su parte, el 25 de noviembre de 2020 el recurrido compareció ante nos mediante *Oposición a Expedición de Auto de Certiorari y Alegato de la Recurrida en Oposición a Recurso de Certiorari.* En esencia, reiteró los argumentos esbozados ante el foro intermedio.

Expedido y perfeccionado el recurso ante nuestra consideración, y contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

### A. Despido Injustificado

**Nuestro ordenamiento laboral no prohíbe el despido de un empleado.** Más bien protege "de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo […] a la vez que otorg[a] unos remedios más justicieros y consubstanciales con los daños causados por un despido injustificado".[34] Es decir, nuestro

---

[34] Exposición de Motivos, *Ley Sobre Despidos Injustificados*, Ley Núm. 80 de 30 de mayo de 1976, 1976 LPR 267, 268. Véase, además:

ordenamiento laboral busca proteger los derechos de los trabajadores con el fin de establecer un balance en las relaciones entre patronos y empleados.[35] Por ello, la **Ley Núm. 80**, *supra*, **tiene como propósito proteger el derecho de los trabajadores ante acciones "arbitrarias y caprichosas" de los patronos.** En ese sentido, esta normativa le impone el pago de una indemnización, conocida como "mesada", al patrono que sin justa causa despida a un empleado que es contratado por un periodo de tiempo indeterminado.[36]

Ahora bien, la Ley Núm. 80, *supra*, no establece específicamente qué constituye un despido injustificado. Sin embargo, menciona varios escenarios o circunstancias que liberan al patrono de responsabilidad. Algunas de estas circunstancias están basadas en conducta atribuible

---

*Feliciano Martes v. Sheraton*, 182 DPR 368 (2011); *Vélez Cortés v. Baxter*, 179 DPR 455 (2010).

[35] *Rivera Figueroa v. The Fuller Brush. Co.*, 180 DPR 894, 903 (2011).

[36] La compensación de la mesada consiste en:

(a)  el sueldo correspondiente a dos (2) meses por concepto de indemnización, si el despido ocurre dentro de los primeros cinco (5) años de servicio; el sueldo correspondiente a tres (3) meses si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; el sueldo correspondiente a seis (6) meses si el despido ocurre luego de los quince (15) años de servicio;

(b)  una indemnización progresiva adicional equivalente a una (1) semana por cada año de servicio, si el despido ocurre dentro de los primeros cinco (5) años de servicio; dos (2) semanas por cada año de servicio, si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; tres (3) semanas por cada año de servicio, luego de haber completado quince (15) años o más de servicio. Ley Núm. 80 del 30 de mayo de 1976 (29 LPRA sec. 185). *Indulac v. Central General*, 2021 TSPR 78.

al empleado, **mientras que otras responden al curso decisorio de la gerencia empresarial**, como sería el cierre, **reorganización** o reducción en la producción, ventas o ganancias.

En lo pertinente, los incisos (d), (e) y (f) del Art. 2 de la Ley Núm. 80, *supra*, incluyen las circunstancias que afectan el buen y normal funcionamiento de una empresa y que, por lo tanto, justifican el despido de empleados. Específicamente, los incisos antes mencionados consideran como **justa causa para el despido de empleados** las circunstancias siguientes:

> […](d) Cierre total, temporero o parcial de las operaciones del establecimiento.
>
> (e) Los cambios tecnológicos o de **reorganización**, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
>
> (f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido. […][37]

De esta forma, con la aprobación de la Ley Núm. 80, *supra*, el legislador reconoció que pueden surgir circunstancias en el funcionamiento y manejo de los negocios que ameriten despedir su empleomanía por justa

---

[37] Artículo 2, Ley Núm. 80 del 30 de mayo de 1976, 29 LPRA sec. 185b. Además, resaltamos que posterior a la aprobación de la Ley Núm. 4-2017, mejor conocida como *Ley de transformación y Flexibilidad Laboral*, el inciso (f) lee de la forma siguiente: (f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.

causa.[38] Es decir, las circunstancias previstas en estos tres (3) incisos giran en torno a las actuaciones del patrono sobre la administración de su negocio, y principalmente, ocurren por razones de índole económica que enfrenta la operación diaria del mismo. Así, el Art. 2 de dicha ley reconoce que no se considerará como justa causa aquel despido que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento.[39]

Por lo tanto, las empresas pueden cesantear a sus empleados sin la obligación de pagar la correspondiente indemnización cuando enfrentan alguna de las precitadas circunstancias. La única limitación que impone la ley en este tipo de casos es la de "retener con preferencia en el empleo al empleado con más antigüedad siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos".[40] Sin embargo, la retención por antigüedad tiene que ser dentro de la misma clasificación ocupacional y no entre clasificaciones ocupacionales distintas.[41]

---

[38] Informe Conjunto, Comisiones de Trabajo y Derechos Civiles y Servicio Público, P. del S. 1112, 7ma Asamblea Legislativa, 3ra Sesión Ordinaria, 23 de abril de 1975.

[39] Artículo 2, Ley Núm. 80, *supra*.

[40] Artículo 3, Ley Núm. 80, *supra*, 29 LPRA sec. 185c.

[41] *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 598-599 (2013).

A tal efecto, esta Curia ha tenido la oportunidad de expresarse específicamente sobre las circunstancias que constituyen **"justa causa"** para el despido de empleados por razones de índole empresarial a la luz del Art. 2 incisos (e) y (f) en una sola ocasión. En SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414 (2013), concluimos que un patrono queda exento de pagar la indemnización fijada por la Ley Núm. 80, *supra*, si la decisión del despido se toma como parte de una reorganización empresarial según dispone el Art. 2(e) de la Ley Núm. 80, *supra*.[42] Específicamente, aclaramos que tal reorganización debe ser *bona fide*, es decir, no puede ser producto del mero capricho del patrono, sino que debe ser producto de consideraciones relacionadas al manejo de la empresa. Concluimos que siempre y cuando responda a una reestructuración *bona fide*, el patrono puede "modificar su forma de hacer negocios a través de algún tipo de cambio dirigido a optimizar sus recursos y aumentar las ganancias, ya sea eliminando plazas, creando otras nuevas o fusionando algunas ya existentes como vehículo para enfrentar problemas financieros o de competitividad".[43]

Así, sostuvimos que los cambios en la empresa pueden acarrear el despido y el reclutamiento simultáneo de personal debido a que "las reformas en ocasiones exigen

---

[42] Artículo 2, *supra*.
[43] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 426 (2013).

prescindir de labores hasta entonces útiles para el funcionamiento del negocio y la incorporación de posiciones nuevas con destrezas diferentes necesarias para lograr unas metas empresariales actualizadas".[44] No obstante, indicamos que para que el patrono pueda justificar el despido al amparo del inciso (e) —por reorganización— debe "presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad".[45]

Por otro lado, es importante señalar que como parte del estado de derecho **previo a la aprobación de la Ley Núm. 4-2017,**[46] cuando un empleado insta un pleito al amparo de la Ley Núm. 80, *supra*, **se activa la presunción de que el despido fue injustificado y recae sobre el patrono la obligación de rebatirla.**[47] Ahora bien, **esa presunción se estableció para facilitar al empleado probar su caso, mas no relevarlo de la necesidad de presentar evidencia alguna para probar sus alegaciones.**

---

[44] Íd., págs. 426-427.

[45] Íd., pág. 427.

[46] El Art. 1.2 de la Ley Núm. 4-2017, *supra*, establece que "[l]os empleados contratados con anterioridad a la vigencia de esta Ley, continuarán disfrutando los mismos derechos y beneficios que tenían previamente, según lo dispuesto expresamente en los Artículos de ésta". Ley Núm. 4-2017, *supra*, 29 LPRA sec. 121a.

[47] Como el despido del recurrido en el caso de marras ocurrió previo a la aprobación de la Ley Núm. 4-2017, *supra*, es de aplicación la presunción que establecía la Ley Núm. 80, *supra*.

**B. Enmienda al artículo 185i de la Ley Núm. 80, *supra*, sobre el Derecho a la Mesada**

A modo ilustrativo, resaltamos que recientemente nuestra Asamblea Legislativa promulgó la **Ley Núm. 4-2017**, mejor conocida como *Ley de Transformación y Flexibilidad Laboral*, la cual enmendó en varios aspectos la Ley Núm. 80, *supra*.[48] De entrada, señalamos que no se hizo formar parte de la intención legislativa **el prohibir el perfeccionamiento de los contratos de transacción ante el escenario de un despido sin justa causa al amparo de la Ley Núm. 80, *supra***. En lo pertinente, y **previo a la enmienda** provocada por la creación de la Ley Núm. 4, *supra*, la **sección 185i de la Ley Núm. 80, *supra***, disponía lo siguiente:

> **Se declara irrenunciable el derecho del empleado que fuere despedido de su cargo, sin que haya mediado justa causa, a recibir la indemnización que establece la sec. 185a de este título.**
>
> **Será nulo cualquier contrato, o parte del mismo, en que el empleado renuncie a la indemnización a que tiene derecho de acuerdo a las secs. 185a a 185m de este título.** (Énfasis nuestro).

---

[48] Según expresó el legislador en la Exposición de Motivos de esta ley, el "objetivo principal con esta legislación es hacer de Puerto Rico una jurisdicción más competitiva, sin menoscabar los derechos esenciales de los trabajadores. Esta Ley hace un justo balance entre las necesidades del sector empresarial y las de los empleados, poniendo en relieve nuestra deferencia y respeto hacia el sector laboral de Puerto Rico". Exposición de Motivos, *Ley de transformación y Flexibilidad Laboral*, Ley Núm. 4-2017, *supra*, (29 LPRA sec. 121a).

A tal efecto, "[l]o que históricamente ha intentado proteger la sección 185i de la Ley 80 es que ningún patrono condicione una oferta de empleo o la permanencia en el empleo de un obrero a cambio de que este último renuncie a la protección que le confiere la Ley 80".[49] Por consiguiente, "ningún patrono en Puerto Rico puede imponer, como condición en el contrato de trabajo, una cláusula en la que el empleado acuerde que su despido se puede realizar sin justa causa".[50] Particularmente, "[e]ste derecho del empleado es el que es de **carácter irrenunciable**"; y "[a]mbos párrafos deben leerse como un todo, y no cada uno por separado".[51]

## C. Autonomía Contractual

En múltiples instancias, hemos establecido que en nuestra jurisdicción rige el principio de la libertad de contratación o la autonomía de la voluntad.[52] A tales efectos, mediante el principio de *pacta sunt servanda*, "[l]os contratantes pueden establecer los pactos, las cláusulas y las condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral ni al orden público".[53] De este modo, nuestro ordenamiento

---

[49] Jaime L. Sanabria Montañez & Fernando Figueroa Santiago, *Derecho Laboral Y De Empleo*, 81 Rev. Jur. UPR 419, 488 (2012).

[50] Íd.

[51] Íd.

[52] *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 173 (2011).

[53] Íd. Todas las referencias al Código Civil de Puerto Rico corresponden al derogado Código Civil de 1930, vigente al momento de los hechos objeto de las controversias traídas ante nuestra consideración. Véase, articulo 1207, 31 LPRA sec. 3372.

jurídico dispone que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos".[54] Por consiguiente, para que un contrato adquiera eficacia jurídica deben coexistir los siguientes requisitos: (1) consentimiento de los contratantes, (2) objeto cierto que sea materia del contrato, y (3) causa de la obligación que se establezca.[55]

Sin embargo, ante la inexistencia de alguno de los requisitos antes mencionados, el contrato podrá ser nulo o anulable. Asimismo, nuestro derogado Código Civil establecía que "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas".[56] Por lo tanto, consistentemente "hemos sostenido que si los términos, las condiciones y las exclusiones de un contrato de seguro son claros, específicos y libres de ambigüedades, se hará valer la clara voluntad de los contratantes".

De esta manera, se ha definido que "[l]os términos de un contrato son claros cuando 'por sí mismos son bastante lúcidos para ser entendidos

---

[54] Art. 1044, 31 LPRA sec. 2994 (Derogado).
[55] Art. 1213, 31 LPRA sec. 3391 (Derogado).
[56] Art. 1233, 31 LPRA sec. 3471 (Derogado).

en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación'".[57] A esos fines, ante la "ausencia de ambigüedad, las cláusulas del contrato son obligatorias, pues no se admitirá una interpretación que vulnere el claro propósito y la voluntad de las partes".[58] En lo que respecta al **consentimiento de las partes**, se ha dispuesto que este pierde eficacia jurídica cuando ha mediado error, dolo, violencia o intimidación en el proceso de contratación.[59] Así pues, de estar presente alguno de estos factores, la parte perjudicada tiene una causa de acción a ser ejercitada dentro del período de cuatro (4) años a partir de la consumación del negocio o desde que ha cesado la violencia o intimidación.[60]

A la luz de lo antes expuesto, el principio de la autonomía contractual, "[...] considerado como axioma del liberalismo económico, permite expandir el campo previsible de los legisladores al permitir introducir en las relaciones contractuales variedades noveles y atípicas producto del imaginario humano. J.L. Concepción Rodríguez, *Derecho de Contratos*, 2003, pág. 35".[61] No obstante, este "no es irrestricto y está sujeto a la

---

[57] *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 387 (2009).
[58] Íd.
[59] Art. 1217 del Código Civil, 31 LPRA sec. 3404 (Derogado).
[60] Art. 1253 del Código Civil, 31 LPRA sec. 3512 (Derogado).
[61] *Coop. Sabaneña v. Casiano Rivera*, supra.

intervención de los tribunales, según dimana del propio Código Civil. Art. 1207 del Código Civil, *supra.* Véase, también, F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed. rev., Madrid Eds. Pirámide, 1976, Vol. III, págs. 338-342".[62]

A la luz de ello, "[c]uando un tribunal interviene con las relaciones contractuales, debe sopesar los valores jurídicos afectados con su intervención".[63] En ese sentido, "[i]nterferir con ella sin justificación alguna es un acto de trastocar una de las bases de nuestro ordenamiento jurídico, que sostiene gran parte de las relaciones sociales y comerciales".[64] En específico, este Tribunal ha establecido que "[l]a intervención moderadora del tribunal con la autonomía contractual de las partes se da únicamente en circunstancias extraordinarias ... [y] ha de ejercerse con extrema cautela y patente justificación por su efecto lesivo a la estabilidad de los contratos y a la seguridad jurídica".[65] Por consiguiente, "interferir con la doctrina de *pacta sunt servanda* es el equivalente de modificar o hasta anular una ley; no olvidemos que los contratos son ley entre las partes. Art. 1044 del Código Civil, *supra*".[66]

**D. Contrato de Transacción**

---

[62] Íd.
[63] *Coop. Sabaneña v. Casiano Rivera*, supra, págs. 181-82.
[64] Íd., pág. 182.
[65] Íd.
[66] Íd.

"La transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado".[67] "Los contratos de transacción pueden ser judiciales o extrajudiciales".[68] Al examinar la figura de la transacción, se "parte de la premisa de que las partes tienen dudas sobre la validez o corrección jurídica de sus respectivas pretensiones y eligen resolver las diferencias mediante concesiones mutuas".[69] De este modo, "la finalidad de este tipo de contrato es 'evitar toda controversia entendida aquélla como divergencia, disputa o debate, esto es, como situación en la que se encuentran dos personas que sostienen tesis diferentes respecto a una determinada relación'".[70] Es por esto que se ha establecido que el contrato de transacción es bilateral, recíproco, oneroso y consensual, es decir, que surge por el mero consentimiento de las partes.[71]

Asimismo, este puede surgir como resultado de una controversia ya sea judicial o extrajudicial.[72] En específico, para que se pueda determinar que en efecto se ha perfeccionado un contrato de transacción deben

---

[67] *Berkan et al v. Mead Johnson Nutrition*, 204 DPR 183, 205 2020); Art. 1709, 31 LPRA sec. 4821 (Derogado).
[68] *Orsini García v. Srio. de Hacienda*, 177 DPR 596, 623 (2009).
[69] *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 156-57 (2021).
[70] *Orsini García v. Srio. de Hacienda*, supra.
[71] *Feliciano Aguayo v. MAPFRE,* supra, pág. 161.
[72] *Berkan et al v. Mead Johnson Nutrition*, supra, pág. 207.

concurrir los siguientes elementos esenciales: "(1) una relación jurídica incierta y litigiosa, (2) la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable y (3) las recíprocas concesiones de las partes".[73] Cabe destacar que previamente este Tribunal "ha afirmado que la interpretación de dichos contratos es de naturaleza restrictiva".[74]

Por ello, es de vital importancia que al indagar en la voluntad de las partes ante el otorgamiento de un contrato de transacción, se examine la intención de las partes contratantes, es decir, que se debe indagar sobre los actos anteriores, coetáneos y posteriores al otorgamiento del contrato.[75] Al respecto, "[e]l contrato debe ser interpretado de manera que el sentido que se le atribuya sea el más conforme para llegar a un desenvolvimiento leal de las relaciones contractuales y para llegar a las consecuencias contractuales exigidas conforme a las normas éticas".[76]

En ese sentido, se espera que en todas las etapas de la contratación las partes actúen conforme a la buena

---

[73] *Feliciano Aguayo v. MAPFRE*, supra, pág. 156.
[74] *Berkan et al v. Mead Johnson Nutrition*, supra, pág. 207.
[75] Art. 1234, 31 LPRA sec. 3472 (Derogado).
[76] *Citibank v. Dependable Ins. Co., Inc.*, 121 DPR 503, 512 (1988).

fe.[77] Además, a esto le son aplicables las reglas generales sobre la interpretación de contratos en lo que no sean incompatibles con las normas que regulan los contratos de transacción.[78] A esos fines, la principal peculiaridad que ejerce el contrato de transacción es que su perfeccionamiento tiene para las partes el elemento de cosa juzgada; siendo así este efecto jurídico su razón de existir.[79] "Esto significa que las partes tienen que considerar los puntos discutidos como definitivamente resueltos; no pueden volver nuevamente sobre los mismos".[80] Es decir, de proceder en contradicción a lo antes expuesto, derrotaría el principal propósito de un contrato de transacción.

**III**

El peticionario nos solicita que revoquemos el dictamen del Tribunal de Apelaciones que confirmó la *Sentencia* emitida por el foro primario la cual, a su vez, tuvo el efecto de desestimar con perjuicio la querella incoada y validar el perfeccionamiento de un contrato de transacción ante el escenario de un despido justificado.[81] Luego de examinar detenidamente los

---

[77] *Feliciano Aguayo v. MAPFRE,* supra*, pág. 191; L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1979, Vol. I, Cap. XI, Sec. 45, págs. 251-252.
[78] *Fonseca et al. v. Hospital HIMA,* 184 DPR 281, 291 (2012).
[79] *Negrón v. ACT*, 196 DPR 489, 510 (2016).
[80] Íd.
[81] Luxury Hotels hizo formar como parte de su primer argumento en la *Solicitud de Desestimación y Alegato de la Recurrida* que el peticionario se encontraba en claro incumplimiento con lo

argumentos esbozados por las partes y la prueba que obra en el expediente de autos, **estimo que actuaron correctamente los foros inferiores.**

En síntesis, el señor Feliciano expone que el foro intermedio erró al desestimar con perjuicio la *Querella* sin haberse celebrado el descubrimiento de prueba sobre la reclamación de la mesada. Asimismo, expuso que Luxury Hotels era quien tenía el peso de la prueba para acreditar la justificación del despido. Además, adujo que el foro intermedio erró al validar un acuerdo nulo y al utilizar en su aplicación leyes, decisiones e interpretaciones administrativas con vigencia posterior a los hechos del presente caso, a pesar de advenir en conocimiento que el derecho aplicable era distinto al actual. **Finalmente, arguyó que, al ser el *Acuerdo* nulo y haber sido despedido injustificadamente, es acreedor del derecho a la mesada que provee la Ley Núm. 80, *supra*.**

En lo pertinente, Luxury Hotels le comunicó al peticionario que la razón de su despido el 4 de noviembre de 2016, luego de haber ejercido sus funciones en dicha compañía desde 1 de diciembre de 1997, fue resultado de una **reorganización y reducción de personal *bona fide*.** Es decir, la empresa aludió correctamente a la circunstancia

---

establecido en la Regla 20 (d) de nuestro reglamento. Al examinar los autos originales del expediente del Tribunal de Apelaciones nos percatamos que el recurso de *certiorari* fue presentado ante nuestra consideración el 16 de noviembre de 2020, y el peticionario notificó al foro intermedio de la presentación de este dentro de las 72 horas según establecido, es decir el 17 de noviembre de 2020.

de reorganización provista por el Art. 2 inciso (e) de la Ley Núm. 80, *supra*. Consecuentemente, ese mismo día el recurrido le hizo entrega al señor Feliciano un *Acuerdo Confidencial de Separación y Relevo General* del cual se acusó recibo. En ese sentido, previo a la firma del peticionario, este fue orientado por la Lcda. Michelle Rosado Báez, abogada del Negociado de Asuntos Legales del Departamento del Trabajo y Recursos Humanos, sobre el contenido, alcance y sobre todo la importancia de tomar una decisión inteligente y voluntaria al suscribir el mismo. A tal efecto, la representante legal certificó, mediante carta fechada el **15 de diciembre de 2016**, la orientación legal brindada al peticionario en base al ordenamiento jurídico vigente.[82]

A la luz de ello, el **17 de diciembre de 2016**, luego de transcurridos aproximadamente cuarenta y tres (43) días desde su cesantía, **el señor Feliciano voluntariamente, y con pleno conocimiento de las consecuencias legales del *Acuerdo*, procedió a firmar el mismo.** Así pues, dentro de las cláusulas contenidas en el *Acuerdo*, y como parte de este, **el peticionario libre y voluntariamente, en acordó primero, que su despido respondió a una reorganización legitima; y, segundo, que**

---

[82] Apéndice de la petición de *certiorari*, Re: *Acuerdo Confidencial de Separación*, pág. 85.

**no tenía derecho a recibir compensación alguna al amparo de la Ley Núm. 80, *supra*.**[83]

Del mismo modo, el señor Feliciano aceptó el que este asunto tuviese el efecto inmediato de cosa juzgada. Además, mediante el *Acuerdo* este se obligó voluntaria y expresamente a transigir y renunciar a cualquier otra causa de acción, incluyendo, el despido injustificado al amparo de la Ley Núm. 80, *supra*.[84] Así pues, al recibir el pago, este aceptó haber dado por finiquitada cualquier controversia originada a raíz de la terminación de empleo. No obstante, en claro incumplimiento con lo previamente pactado el **1 de noviembre de 2019**, el peticionario presentó una *Querella* contra Luxury Hotels.

Tal y como surge del expediente, el 13 de mayo de 2020, el foro primario determinó mediante *Sentencia* que en virtud de lo pactado en el *Acuerdo Confidencial de*

---

[83] Apéndice de la petición de *certiorari*, *Acuerdo Confidencial de Separación y Relevo General,* págs. 75-84. Mediante la cláusula número 4 se pactó lo siguiente:

> 4. **Feliciano Padilla expresamente reconoce que la terminación de su empleo respondió a una reorganización y reducción válida de personal en la Compañía, conforme a los criterios establecidos en los artículos 2 y 3 de la Ley Núm. 80 del 30 de mayo de 1976, razón por la cual expresamente reconoce que no tiene derecho a recibir compensación alguna al amparo de lo dispuesto en dicho estatuto.**

[84] Apéndice del recurso de *certiorari*, *Alegato en Oposición a Recurso de Certiorari*, pág. 133. Surge del *Acuerdo* que el peticionario renunció a las siguientes leyes: Ley Núm. 80 de 30 de mayo de 1976, según enmendada; discrimen al amparo de las Ley Núm. 100 de 30 de junio 1959, el Título VII de la Ley de Derechos Civiles de 1964; la Ley Federal de Derechos Civiles de 1866; la Ley Federal de Derechos Civiles de 1871; y la Ley Contra el Discrimen por Edad en el Empleo de 1967 conocida como el *Age Disrimination in Employment Act* (ADEA), según enmendada por el *Older Workers Benefit Protection Act.*

*Separación y Relevo General* otorgado por el señor Feliciano el 17 de diciembre de 2016, procedía desestimar con perjuicio la *Querella.* Más adelante, el foro intermedio estuvo conteste y confirmó la determinación del foro primario. Esto, a pesar de que, el Tribunal de Primera Instancia erróneamente hizo referencia al Artículo 9 de Ley Núm. 80, *supra*, enmendado por la Ley Núm. 4-2017, e inaplicable a los hechos de la presente controversia.[85] Visto así, estimo correcta la determinación del Tribunal de Apelaciones en el sentido de que el señor Feliciano **no es merecedor del derecho a la mesada.** Esto, porque el peticionario expresamente reconoció que su despido fue justificado mediante el otorgamiento de un **contrato de transacción válido.**

---

[85] A modo ilustrativo, **la Ley Núm. 4-2017,** *supra*, la cual tuvo el efecto de enmendar **la sección 185i de la Ley Núm. 80,** *supra*, ahora lee de la siguiente manera:

> Se declara irrenunciable el derecho del empleado que fuere despedido de su cargo, sin que haya mediado justa causa, a recibir la indemnización que establece el Artículo 1 de esta Ley.

> Será nulo cualquier contrato, o parte del mismo, en que el empleado renuncie a la indemnización a que tiene derecho de acuerdo a esta Ley. **Sin embargo, una vez ocurrido el despido o la notificación de la intención de despedir, el derecho a la indemnización dispuesta por esta Ley podrá transigirse, siempre y cuando estén presentes todos los requisitos de un contrato de transacción válido.** (Énfasis nuestro).

Llamamos la atención a que en la exposición de motivos de la Ley Núm. 4-2017, *supra*, se dispuso lo siguiente:

> […]Así, **se reconoce que las reclamaciones por despido pueden ser transigidas después del despido, lo cual le ahorrará mucho tiempo, dinero y esfuerzo a las partes ya que tendrán la plena libertad de llegar a acuerdos de transacción si así lo desean.** A su vez, **esta Ley reafirma que el derecho a la indemnización de la Ley Núm. 80,** *supra*, **no puede renunciarse prospectivamente.** (Énfasis nuestro).

Hemos reiterado que la Ley Núm. 80, *supra*,[86] **expresamente prohíbe el que un empleado que es despedido sin justa causa renuncie a su derecho a la mesada.** Un acuerdo en contravención a esta normativa es nulo. Ahora bien, la enmienda al artículo 9 de la Ley Núm. 80, *supra*, a consecuencia de la aprobación de la Ley Núm. 4-2017, *supra*, lo que añadió fue que, una vez materializado el despido sin justa causa, o esté presente la intención de despedir, el empleado pueda transigir la indemnización que se provee mediante la mesada, siempre y cuando concurran todos los elementos de un contrato de transacción. A la luz de ello, **reafirmo la irrenunciabilidad del derecho a la mesada cuando el despido es sin justa causa. No obstante, este no era el caso ante este Tribunal.**

Conforme a lo anterior, reitero que nuestro ordenamiento jurídico provee un remedio para proteger a los empleados que son despedidos sin justa causa. Sin embargo, en el presente caso soy del parecer que aquí se configuraron todos los elementos para el perfeccionamiento de un contrato de transacción válido en esta materia. De la prueba traída ante nuestra consideración **se puede concluir que el señor Feliciano se obligó contractualmente de una forma libre, voluntaria e informada.** Ambas partes extrajudicialmente anticiparon y

---

[86] 29 LPRA sec. 185i.

previnieron el comienzo de un trámite litigioso a cambio de prestaciones recíprocas. Ahora bien, la protección que provee la Ley Núm. 80, *supra*, **se activa cuando un empleado es despedido sin justa causa.**

A tal efecto, el peticionario no nos colocó en posición de concluir que hubiese mediado error, dolo, intimidación o violencia durante el proceso de contratación, lo cual nos moviera a concluir que su despido fue injustificado. Mediante sus posturas, el peticionario se limitó a esbozar que dicho *Acuerdo* era nulo por ser contrario a la ley, la moral y el orden público. No argumentó que su consentimiento hubiese estado viciado. Debido a que el despido del señor Feliciano estuvo justificado, y ante la **existencia de un contrato de transacción válido, no se activó la presunción de despido injustificado a la que hace referencia el peticionario. Por ello, me encuentro conteste con la determinación del foro intermedio,** mas no así con el disenso tangencial que esbozan algunos de los miembros de este Foro.

Por consiguiente, **mi postura se centra en que no existe impedimento para que un empleado que expresamente reconoce y acepta que fue despedido por justa causa otorgue un contrato de transacción luego de su cesantía a cambio de una indemnización por parte de su expatrono.** Después de todo, **nuestro ordenamiento actual fomenta el**

**que se otorgue un contrato de transacción válido sobre el derecho a la mesada**, siempre y cuando se perfeccione luego de cesanteado el empleado sin justa causa. **De este modo, prohibir los contratos transaccionales cuando el empleado es despedido por justa causa derrotaría el principio de la autonomía de la voluntad contractual que gobierna nuestro estado de derecho.**

Lamentablemente, ciertos compañeros togados se aferran a una versión alterada de los hechos particulares del presente caso, al presumir que Luxury Hotels unilateralmente seleccionó el motivo particular para despedir al peticionario. **Esto, presuntamente apartándose de la libertad de la autonomía contractual.** No perdamos de perspectiva, que el señor Feliciano fue orientado de las consecuencias jurídicas de ejecutar el referido contrato. No obstante, algunos miembros de este Foro, erróneamente, desvirtúan el curso de acción al indicar que resolver en contrario quebrantaría la protección que provee la Ley 80, *supra*. Ciertamente, es posible validar contratos como este, sin atentar contra la política pública en contra del despido injustificado.

A la luz de lo antes expuesto, resulta evidente que el foro intermedio no cometió los señalamientos de errores presentados por el peticionario en el recurso ante nuestra consideración. Por tanto, las determinaciones de los foros revisores, que acarrearon la

desestimación con perjuicio la *Querella* incoada por el señor Feliciano, deben ser confirmadas por esta Curia.


                                        Edgardo Rivera García
                                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Orlando Feliciano<br><br>Peticionario<br><br><br>v.<br><br>LUXURY HOTELS INTERNATIONAL OF PUERTO RICO INC., H/N/C THE RITZ CARLTON SAN JUAN HOTEL SPA & CASINO<br><br>Recurrido | CC-2020-0542 | Certiorari |

Opinión disidente emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ, a la cual se unieron el Juez Asociado Señor MARTÍNEZ TORRES y el Juez Asociado Señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 26 de octubre de 2022.

El derecho a recibir la indemnización concebida en Ley de indemnización por despido sin justa causa, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA secs. 185a-185n (Ley Núm. 80), es irrenunciable. Asimismo, todo contrato que tenga el efecto ulterior de provocar, de cualquier modo, la renuncia a tal indemnización, es nulo. Estos preceptos surgen claramente de la Ley Núm. 80 y, además, han sido validados consecuentemente por la vía jurisprudencial.

No obstante lo anterior, este Tribunal, al estar igualmente dividido, se aparta de estos firmes lineamientos y confirma que un patrono pueda

unilateralmente escoger el motivo por el cual despidió a su empleado. Así pues, al amparo de un acuerdo transaccional contrario a los postulados reseñados, se permite que se prive a los tribunales de revisar la legalidad del despido en cuestión.

Como agravante, lo convalidado implica que, a través de un plumazo, los empleados y las empleadas del sector privado queden despojados de todas las protecciones laborales promulgadas en la Ley Núm. 80. **No puedo avalar este peligroso curso de acción, pues conlleva el quebrantamiento neurálgico y la nulidad práctica de, seguramente, una de las leyes de mayor trascendencia en nuestro ordenamiento jurídico laboral.**

Veamos, entonces, los fundamentos en Derecho que orientan mi disenso.

**I**

**A.**

Como es conocido, la Ley Núm. 80 forma parte del conglomerado de estatutos laborales que protegen a la clase obrera de actuaciones arbitrarias del patrono e imponen una serie de remedios para desalentar la práctica de los despidos sin justa causa. Véase, Romero et als. v. Cabrer Roig et als., 191 DPR 643, 650 (2014); Jusino et als. v. Walgreens, 155 DPR 560, 571 (2001).

En sintonía con ese propósito, la Ley Núm. 80 contiene un esquema probatorio particular que se diferencia de otro tipo de reclamaciones donde es el demandante quien tiene

el peso de probar su reclamación. En ese sentido, el esquema diseñado presupone que, una vez un empleado insta una acción cuestionando su despido, este se considerará injustificado a menos que el patrono demuestre la justa causa exigida por la Ley Núm. 80. Romero et als. v. Cabrer Roig et als., supra, pág. 652.

Ciertamente, si el patrono no rebate la presunción de que el despido fue injustificado, será penalizado con los remedios que dispone la ley precitada. Recuérdese que "[e]s a la empresa a quien incumbe, por mandato de la ley, demostrar que por esas circunstancias se vio en la necesidad de despedir empleados. En otras palabras, el patrono[,] en todo momento[,] deberá probar la justa causa del despido". SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 429 (2013) (citando a R. N. Delgado Zayas, Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño, San Juan, [sin Ed.], rev. 2005, pág. 125).

Al respecto, el Art. 2 de la Ley Núm. 80, 29 LPRA sec. 185b, establece que, generalmente, los despidos cobijados por algunas de las siguientes circunstancias empresariales constituyen eximentes de responsabilidad:

> (d) Cierre total, temporero o parcial de las operaciones del establecimiento. […]
> […]
>
> **(e)** Los cambios tecnológicos o **de reorganización**, así́ como los de estilo, diseño o naturaleza del producto que se produce o maneja por

>el establecimiento y los cambios en los servicios rendidos al público.
>
>(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.[1]

Al interpretar el Art. 2(e) de la Ley Núm. 80, supra, este Tribunal ha determinado que, en todo despido motivado por una reorganización, "el patrono debe presentar evidencia acreditativa del plan de reorganización implantado, así como su utilidad". Véase, SLG Zapata-Rivera v. J.F. Montalvo, supra, pág. 427. El propósito de esta exigencia es que se establezca claramente que el despido en cuestión respondió al buen y normal funcionamiento del establecimiento y no a un acto arbitrario o caprichoso del patrono. **Resáltese que tales exigencias fueron reiteradas, incluso, en el precedente más reciente sobre la materia.** Véase, Segarra Rivera v. International Agency, Inc., 2022 TSPR 31, 208 DPR __ (2022).

No obstante, y muy a pesar de que en la controversia ante nuestra consideración el patrono utilizó la supuesta reorganización como justificación para el despido, lo que hoy se valida exime al patrono de presentar evidencia acreditativa del plan de reorganización y su utilidad, según interpretado en SLG Zapata-Rivera v. J.F. Montalvo,

---

[1] (Negrillas suplidas). Íd.

supra, y reiterado recientemente en <u>Segarra Rivera v.
International Agency, Inc.</u>, supra. Ello, pues, la
sentencia confirmatoria tiene el efecto ulterior de
permitir que, mediante un contrato de transacción entre
el patrono y el empleado, se pueda convenir la justa causa
del despido y renunciar a la indemnización que establece
la Ley Núm. 80.

Como veremos, tal conclusión es contraria a los
principios expresamente delineados en el Art. 9 de la Ley
Núm. 80, <u>infra</u>, con respecto a la irrenunciabilidad de la
indemnización dispuesta por ley y la nulidad de todo
contrato que promueva tal renuncia. Peor aún, tiene el
efecto de privar a los tribunales de evaluar la veracidad
de la justificación alegada para el despido, atentándose
así contra los propósitos sociales que promulga la Ley
Núm. 80. Veamos.

**B.**

La aprobación de las diversas leyes que regulan los
despidos injustificados históricamente ha procurado
moderar la relación obrero-patronal con el propósito de
nivelar la relación —desigual, por su naturaleza— entre
el patrono y su empleomanía.

Particularmente, desde el 1937, se codificó en
nuestro ordenamiento jurídico que la compensación otorgada
a un empleado despedido injustificadamente es

irrenunciable.[2] Para garantizar ese fin y disuadir actuaciones en contrario, se establecieron una serie de penalidades, civiles y criminales, en contra de:

> Todo patrono que obligare, indujere o permitiere a un obrero o empleado a renunciar, aceptar o convenir en renuncia, o firmar cualquier contrato en cuya virtud se renunciare a cualquier derecho, beneficio o compensación adicional a que el obrero o empleado tuviere derecho en caso de cesantía de acuerdo con las leyes de Puerto Rico[.][3]

A partir de ese momento, quedó claro que los patronos estaban vedados de formalizar un contrato con un empleado mediante el cual este último aceptara renunciar a cualquier derecho, beneficio o compensación brindada por la ley precitada. Esto, por supuesto, con el fin de prohibir que los patronos causaran dicha renuncia de cualquier modo.

Con la aprobación de la Ley Núm. 80 se fortalecieron aún más las protecciones al obrero en aras de evitar las actuaciones arbitrarias por parte de los patronos. Poco después de su promulgación, la Ley Núm. 80 fue enmendada con el propósito de incluir ciertas garantías contenidas en las leyes laborales predecesoras.

---

[2] Ley para garantizar a los obreros y empleados los beneficios de las compensaciones adicionales que fijan las leyes de Puerto Rico en caso de cesantía sin previo aviso ni causa justificada, fijar penalidades por la infracción de sus disposiciones, y para otros fines, Ley Núm. 17 de 5 de abril de 1937, 1937 LPR 146, pág. 146. Véase, secs. 1 y 2.

[3] Íd., sec. 3.

Según consta en la Exposición de Motivos de la Ley Núm. 16 del 21 de mayo de 1982, la razón de la enmienda obedeció a que:

> La Ley Núm. 80 […] adolece de lagunas en determinadas áreas, tales como la irrenunciabilidad a la indemnización y lo relativo al periodo probatorio. La irrenunciabilidad a la compensación por despido está vedada por disposición de la Ley Núm. 17, aprobada el 5 de abril de 1937. La misma, sin embargo, se refiere a la compensación por despido que disponía la Ley Núm. 43, aprobada el día 28 de abril de 1930. […]
>
> La Ley Núm. 43, ya citada, fue derogada por la Ley Núm. 50, aprobada el día 20 de abril de 1949. […]
>
> **La Ley Núm. 80 nada dispone sobre la irrenunciabilidad de la indemnización por despido injustificado ni sobre el periodo probatorio.** Es posible, por tanto, argumentar con éxito, que el derecho de la indemnización por despido es renunciable bajo el Artículo 4 del Código Civil, aún cuando podría sostenerse, con buenos fundamentos en derecho, **que la renunciabilidad es contraria al orden público bajo el mismo Artículo 4.** […] **Así se sometería al trabajador a la voluntad del patrono en detrimento de los derechos que se han logrado.**[4]

Apréciese que la Asamblea Legislativa estuvo consciente de que la falta de una disposición expresa en la Ley Núm. 80 sobre las garantías relacionadas con la irrenunciabilidad de la indemnización y la nulidad de cualquier contrato que dispusiera lo contrario, era un

---

[4] (Negrillas suplidas). 1982 LPR 34-35.

asunto prioritario. En aras de eliminar ese vacío y, a su vez, garantizar la eficacia plena de los derechos concedidos en la Ley Núm. 80, se añadió el Art. 9 siguiente:

> Se declara irrenunciable el derecho del empleado que fuere despedido de su cargo, sin que haya mediado justa causa, a recibir la indemnización que establece [el Artículo 1].

> Será nulo cualquier contrato, o parte del mismo, en que el empleado renuncie a la indemnización a [la] que tiene derecho de acuerdo a [esta ley].[5]

Del artículo precitado se desprende que el derecho de un empleado despedido injustificadamente a recibir la indemnización dispuesta en la ley es irrenunciable. Por tanto, todo contrato mediante el cual se pacte lo contrario es nulo. Esta inserción, tan clara como específica, fue realizada con el propósito de proteger los derechos del empleado por encima de la voluntad del patrono. Véase, Exposición de Motivos, Ley Núm. 16 de 21 de mayo de 1982, 1982 LPR 34-35.

---

[5] Íd., 29 LPRA sec. 185i. Reconocemos que, con la aprobación de la Ley de transformación y flexibilidad laboral de Puerto Rico, Ley Núm. 4-2017, 29 LPRA sec. 121 et seq., el artículo antes citado fue enmendado. **Sin embargo, tal enmienda es inaplicable al caso ante nuestra consideración por razón de que el despido del empleado ocurrió previo a la entrada en vigor de la ley precitada.** Véase, Íd., Art. 1.2, 29 LPRA sec. 121. Por consiguiente, aclaramos que, cuando se hace referencia al Art. 9 de la Ley Núm. 80, supra, nos referimos al artículo correspondiente previo a la enmienda introducida por la Ley Núm. 4-2017.

Bajo este cuadro normativo, en <u>Orsini García v. Srio. de Hacienda</u>, 177 DPR 596 (2009), se evaluó un contrato de transacción que otorgaba una indemnización de $163,323.66 para transigir ciertas reclamaciones relacionadas con diversas leyes laborales estatales y federales, incluyendo la Ley Núm. 80. Ello, a cambio de la firma de un "Acuerdo" que la compañía le proveyó al empleado al separarlo de su empleo.

Al auscultar cómo debía reputarse tal indemnización, este Tribunal dispuso lo siguiente:

> [P]ara resolver esta controversia no es necesario expresarnos sobre la totalidad de la cláusula del contrato que dispone la renuncia a las leyes laborales mencionadas. Más bien, **nos basta evaluar si el trabajador puede renunciar a los derechos concedidos por la Ley Núm. 80 de 1976**, <u>supra</u>. **De entrada[,] encontramos que la Asamblea Legislativa expresamente dispuso lo contrario**, en la Ley Núm. 16 de 21 de mayo de 1982 (29 LPRA sec. 185i), que enmendó la Ley Núm. 80 de 1976.[6]

Nótese que, en <u>Orsini</u>, el "Acuerdo" en cuestión no establecía "que se hubiera renunciado a la indemnización dispuesta por la Ley Núm. 80" ni se suscitó "controversia alguna en cuanto al pago de la 'mesada' dispuesta en dicha ley", por lo que el Tribunal no tuvo la necesidad de declarar su nulidad.[7] Ahora bien, este Tribunal estimó que, **"para que sean válidos, estos acuerdos [transaccionales]**

---

[6](Negrillas suplidas). <u>Orsini García v. Srio. de Hacienda</u>, supra, págs. 626-627.

[7]Íd., pág. 627.

**deben cumplir con el pago total de la 'mesada', porque el derecho a ésta no es renunciable".**[8]

Posteriormente, en <u>Vélez Cortés v. Baxter</u>, 179 DPR 455 (2010), se analizó una controversia similar relacionada con si el pago concedido por un patrono al cesantear a los empleados debía acreditarse a la mesada que le correspondía a cada empleado. Tras esbozar parte de la hermenéutica legal aplicable a los casos laborales, plasmar cómo se computa la mesada y, a su vez, reafirmar lo resuelto en <u>Orsini</u>, este Tribunal reiteró que **"[e]l derecho del empleado despedido 'sin justa causa' a recibir la indemnización así computada es irrenunciable".**[9] De esta forma, se concluyó que:

> [L]a acreditación de una indemnización por años de servicio o cesantía dada por el patrono […] sirve de beneficio al empleado. **Sin embargo, por ésta ser insuficiente para cubrir la totalidad de la mesada correspondiente al momento del despido y ésta ser irrenunciable por el empleado,** solamente provee un crédito a[l patrono]. Por consiguiente, los empleados tienen derecho a toda otra suma adeudada en concepto de mesada.[10]

Pese a la discusión estatutaria y jurisprudencial que antecede, la sentencia que hoy se emite no reconoce tales disposiciones y pronunciamientos. Como veremos, el

---

[8] (Negrillas suplidas). Íd., pág. 629.

[9] (Negrillas suplidas). <u>Vélez Cortés v. Baxter</u>, supra, pág. 466 (citando al Art. 9 de la Ley Núm. 80, <u>supra</u>).

[10] (Negrillas suplidas). Íd., pág. 471.

dictamen confirmado es diametralmente opuesto a lo exigido por nuestro ordenamiento jurídico.

## II

El Sr. Orlando Feliciano (señor Feliciano) trabajó en el Ritz Carlton San Juan Hotel Spa & Casino (Ritz Carlton) por más de diecinueve (19) años. En su último día de trabajo, Ritz Carlton le remitió un <u>Acuerdo confidencial de separación y relevo general</u> (Acuerdo) que contenía múltiples renuncias a diversas reclamaciones laborales a cambio de la aceptación de un pago menor a los veinte mil dólares ($20,000.00). En lo concerniente a la Ley Núm. 80, el nombrado Acuerdo establecía lo siguiente:

> Feliciano Padilla expresamente reconoce que la terminación de su empleo respondió a una reorganización y reducción válida de personal en la Compañía, conforme a los criterios establecidos en los artículos 2 y 3 de la Ley Núm. 80 del 30 de mayo de 1976, razón por la cual expresamente reconoce que no tiene derecho a recibir compensación alguna al amparo de lo dispuesto en dicho estatuto.[11]

Según surge del expediente, el señor Feliciano firmó el denominado Acuerdo. Sin embargo, posteriormente presentó una querella en contra de su expatrono en la que alegó que Ritz Carlton lo despidió sin justa causa y no le brindó la indemnización a la que tiene derecho según la Ley Núm. 80. Además, argumentó que, a pesar de que se le informó que su cesantía respondió a una reorganización

---

[11]Apéndice de <u>certiorari</u>, <u>Acuerdo confidencial de separación y relevo general</u>, pág. 85.

y reducción de personal, realmente se le despidió con la intención de discriminar por razón de su edad y raza.

Por su parte, Ritz Carlton contestó la querella y solicitó su desestimación. En específico, arguyó que, al firmar el nombrado Acuerdo, el señor Feliciano: (1) reconoció que su despido fue por justa causa y obedeció a una reorganización y reducción de personal de conformidad con la Ley Núm. 80, y (2) renunció a cualquier causa de acción por despido injustificado o discrimen al amparo de los estatutos locales y federales aplicables.

En respuesta, el señor Feliciano se opuso a la desestimación peticionada. Particularmente, alegó que el Acuerdo firmado es nulo, ya que, de conformidad con lo dispuesto en la Ley Núm. 80 y lo resuelto en Orsini García v. Srio. de Hacienda, supra, y Vélez Cortés v. Baxter, supra, el derecho a la mesada es irrenunciable. Asimismo, reafirmó la nulidad del Acuerdo bajo el argumento de que este opera en contra de la ley, la moral y el orden público.

Tras varias incidencias que resultan innecesarias pormenorizar, el Tribunal de Primera Instancia emitió una Sentencia en la que desestimó con perjuicio las reclamaciones incoadas por el señor Feliciano. En suma, el foro primario determinó que las expresiones de este Tribunal en Orsini García v. Srio. de Hacienda, supra, y Vélez Cortés v. Baxter, supra, a los efectos de que el derecho a la mesada es irrenunciable, son inaplicables.

Esto, pues, según el Tribunal de Primera Instancia, tal disposición únicamente cobra vigencia cuando el empleado ha sido despedido sin justa causa. En ese sentido, concluyó que, toda vez que el señor Feliciano firmó un Acuerdo aceptando que fue despedido con justa causa, no cabe hablar de que se renunció a la mesada de forma contraria a los precedentes antes citados o a lo dispuesto en la Ley Núm. 80.

Inconforme, el señor Feliciano acudió al Tribunal de Apelaciones y, en esencia, reiteró los argumentos esgrimidos ante el foro primario. Planteó, además, que el Tribunal de Primera Instancia erró al desestimar por la vía sumaria y sin ni tan siquiera haberse realizado el descubrimiento de prueba. Abundó que ello ocurrió así no empece de que, a tenor con la Ley Núm. 80, le correspondía al Ritz Carlton demostrar que el despido estuvo justificado.

Así las cosas, el Tribunal de Apelaciones confirmó la sentencia emitida al coincidir con los fundamentos esbozados por el foro primario.

Trabada así la controversia, por estar igualmente dividido, este Tribunal confirma lo resuelto por los foros recurridos. Al así hacerlo, peligrosamente abre la puerta para que un patrono pueda unilateralmente escoger qué causal justificó el despido de cierto empleado y, de esta

forma, impedir que los tribunales evalúen la validez de la justa causa convenida. **Disiento de tal proceder.**

De entrada, preciso destacar que, desde SLG Zapata-Rivera v. J.F. Montalvo, supra, se delineó cómo un patrono debe justificar una reorganización bajo el Art. 2(e) de la Ley Núm. 80, supra. A pesar de lo anterior, hoy este Tribunal descarta auscultar si el despido del señor Feliciano se debió a una reorganización bona fide, según exigido por el precedente antes citado. De este modo, se mantiene la validez de un supuesto Acuerdo entre las partes mediante el cual el señor Feliciano aceptó que fue despedido con justa causa y renunció a la indemnización provista por la Ley Núm. 80.

Sin embargo, la conclusión de los foros recurridos resulta en una interpretación contraria a la letra clara del Art. 9 de la Ley Núm. 80, supra. Como agravante, se distancia de los precedentes de Orsini García v. Srio. de Hacienda, supra, y Vélez Cortés v. Baxter, supra, los cuales desde el inicio del pleito y a través de todo el trámite apelativo, tanto las partes como los foros recurridos han discutido su aplicación a los hechos de esta controversia.

Según expuesto, históricamente las leyes que regulan los despidos injustificados han incluido cortapisas en aras de proteger la irrenunciabilidad de los derechos garantizados en la ley. **La Ley Núm. 80 aplicable a esta**

**controversia no fue la excepción.** A esos efectos, la Asamblea Legislativa insertó una cláusula con el propósito de evitar que se "argumentar[a] con éxito, que el derecho de la indemnización por despido es renunciable bajo el Artículo 4 del Código Civil". Véase, Exposición de Motivos de la Ley Núm. 16 del 21 de mayo de 1982, 1982 LPR 35.[12]

A raíz de la enmienda aludida, el Art. 9 de la Ley Núm. 80, <u>supra</u>, establece claramente dos (2) premisas, a saber: **(1)** que es **irrenunciable** el derecho a la mesada, y **(2)** que es **nulo** todo contrato que, de cualquier modo, provoque tal renuncia.[13] **Adviértase que existe una prohibición categórica de la renuncia a la indemnización provista por ley, independientemente de la diferenciación entre contratos previos o posteriores a la cesantía.**

---

[12]Nótese que el Art. 4 del Código Civil al que se hace referencia, disponía, en lo pertinente, que "[l]os derechos concedidos por las leyes son renunciables, a no ser esta renuncia contra la ley, el interés o el orden público, o en perjuicio de tercero". 31 LPRA ant. sec. 4.

[13]A modo de referencia, el Art. 9 de la Ley Núm. 80, <u>supra</u>, dispone lo siguiente:

> Se declara irrenunciable el derecho del empleado que fuere despedido de su cargo, sin que haya mediado justa causa, a recibir la indemnización que establece [el Artículo 1].

> Será nulo cualquier contrato, o parte del mismo, en que el empleado renuncie a la indemnización a [la] que tiene derecho de acuerdo a [esta ley].

Ahora bien, aunque la Opinión de conformidad reconoce parcialmente este análisis jurídico, concluye que no es de aplicabilidad al caso del señor Feliciano porque "la protección que provee la Ley Núm. 80, supra, **se activa cuando un empleado es despedido sin justa causa**".[14] De esta manera, se intima que como el señor Feliciano convino a que su despido obedeció a una reorganización —es decir, por justa causa—, no cabe hablar de irrenunciabilidad alguna debido a que tal precepto solo aplica cuando el empleado es despedido sin justa causa.[15]

Por una parte, este razonamiento pasa por alto la máxima de que la adjudicación de si un despido fue por justa causa es una tarea que le corresponde únicamente a los tribunales. Esto es así en consideración, no tan solo de las diversas garantías que se activan durante todo el proceso judicial —tales como, la presunción de que la cesantía fue injustificada y que recae en el patrono el peso de probar lo contrario—, sino por razón de que **los tribunales somos los únicos llamados "a asegurar que se cumpla con lo dispuesto en la ley [Núm. 80]"**. SLG Zapata-Rivera v. J.F. Montalvo, supra, pág. 447. **Por**

---

[14](Negrillas suplidas en el original). Opinión de conformidad, pág. 30.

[15]Recuérdese que, en el Acuerdo en cuestión, se dispuso que el señor Feliciano "expresamente reconoce que la terminación de su empleo respondió a una reorganización […] conforme a los criterios establecidos en los artículos 2 y 3 de la Ley Núm. 80". Apéndice de certiorari, Acuerdo confidencial de separación y relevo general, pág. 85.

**consiguiente, resulta obligatorio concluir que el Acuerdo utilizado para relevar a los tribunales de su tarea indelegable de adjudicar la validez de la justa causa del despido del señor Feliciano es nulo.**

Además, la justa causa es de carácter irrenunciable como consecuencia lógica de lo dispuesto en el Art. 9 de la Ley Núm. 80, <u>supra</u>. Particularmente porque renunciar a la justa causa conlleva necesariamente la abdicación de la indemnización a la que finalmente el empleado podría tener derecho, estando esto último vedado expresamente por el Art. 9 de la Ley Núm. 80, <u>supra</u>. **También, por este otro motivo, el denominado Acuerdo es nulo.**

Como vimos, la renuncia a este derecho, según convenida en el Acuerdo,[16] choca directamente con el Art. 9 de la Ley Núm. 80, <u>supra</u>, el cual "declara irrenunciable el derecho del empleado despedido de su cargo […] a la indemnización a [la] que tiene derecho de acuerdo con [la Ley Núm. 80]". Ahora bien, tal y como discutimos, la irrenunciabilidad aludida ha sido validada por este Tribunal en múltiples ocasiones. Véase, por ejemplo, <u>Orsini García v. Srio. de Hacienda</u>, supra **("[B]asta evaluar si el trabajador puede renunciar a los derechos concedidos por la Ley Núm. 80** de 1976, <u>supra</u>. **De entrada**[,]

---

[16]En lo pertinente, el documento establece que el empleado "expresamente reconoce que no tiene derecho a recibir compensación alguna al amparo de lo dispuesto en [la Ley Núm. 80]". Apéndice de <u>certiorari</u>, <u>Acuerdo confidencial de separación</u>, pág. 85.

**encontramos que la Asamblea Legislativa expresamente dispuso lo contrario");**[17] <u>Vélez Cortés v. Baxter</u>, supra (**"[E]l derecho del empleado despedido "sin justa causa" a recibir la indemnización así computada es irrenunciable").**[18]

Como cuestión de hecho, la irrenunciabilidad de la indemnización dispuesta en la Ley Núm. 80 y la nulidad de todo contrato que atente contra tal irrenunciabilidad fue validada, incluso, por el Tribunal Federal para el Distrito de Puerto Rico. Particularmente, en <u>Ortiz v. American Airlines, Inc.</u>, 109 F. Supp. 3d 450 (D.P.R. 2015), ante la existencia de un contrato mediante el cual se renunció a toda indemnización que pudiese tener el

---

[17](Negrillas suplidas). <u>Orsini García v. Srio. de Hacienda</u>, supra, pág. 626.

Sobre el particular, conviene resaltar lo expuesto por el Juez Asociado Señor Martínez Torres:

> **El Art. 9 de esta ley, 29 L.P.R.A. sec. 185i, establece que será nulo cualquier contrato, o parte éste, en que el empleado renuncie a la indemnización a que tiene derecho según la ley, por un despido injustificado.** Conforme a lo anterior, para que un acuerdo de transacción o relevo de una causa de acción al amparo de la Ley Núm. 80, <u>supra</u>, sea válido, éste debe cumplir con el pago total de la mesada a la que tendría derecho el empleado.

Íd., pág. 650 (Opinión concurrente emitida por el Juez Asociado señor Martínez Torres).

[18](Negrillas suplidas). <u>Vélez Cortés v. Baxter</u>, supra, pág. 466 (citando al Art. 9 de la Ley Núm. 80, <u>supra</u>).

empleado a la luz de la Ley Núm. 80, se determinó lo siguiente:

> **The court agrees with Plaintiffs' assertion that any clause in which an employee waives his or her rights to receive the statutory severance is null and void.** Tit. 29, § 185i. "The language of an unambiguous statute typically determines its meaning ... That is, if the plain language of the statute points unerringly in a single direction, an inquiring court ordinarily should look no further." **This court finds tit. 29 § 185i to be unequivocal and utterly clear, establishing that** "[A]ny contract ... in which the employee waives the compensation to which he is entitled to ... shall be null and void." Id. **Thus, the aforementioned waiver clause, in which Plaintiffs waived all their Law 80 claims, is undoubtedly null and void as a matter of law.**[19]

_____

[19] (Cita depurada y negrillas suplidas). Ortiz v. American Airlines, Inc., supra, pág. 456. Resaltamos que, en la Opinion and order emitida por el entonces District Judge, Hon. Gustavo A. Gelpí, este hizo referencia a un voto concurrente realizado en una controversia similar por el entonces Circuit Judge, Hon. Juan R. Torruella.

**Por su pertinencia, lo citamos in extenso:**

> I concur to briefly note my disagreement with the majority's conclusion that Section 185i—Law 80's anti-waiver provision—is ambiguous. **In my view, a plain reading of that provision indicates a categorical prohibition on the waiver, by contract, of an employee's Law 80 rights to compensation, prospective or accrued, including post-termination and in the extrajudicial settlement context.** The statute refers generally to the rights of employees who are "discharged," in the past tense, as coming within the coverage of those who cannot waive receipt of compensation, indicating that

A la luz de lo expuesto, resultaba imperativo que se concluyera que toda transacción que ignore o pretenda vulnerar lo dispuesto en el Art. 9 de la Ley Núm. 80 es, como cuestión de Derecho, nula por ser contraria a la ley. Resolver lo contrario operaría en detrimento del orden público y de "[n]uestra jurisprudencia interpretativa[, la cual] ha sido consecuente en ofrecer la mayor protección al trabajador cuando éste es objeto del capricho o abuso patronal. Por eso recalcamos recientemente que las protecciones de la Ley [Núm.] 80 son irrenunciables".[20]

---

contracts made by employees vested with accrued rights are invalid if they contain waivers of those rights. Further, the right that "is hereby declared to be unwaiveable" is not conditioned or modified, supporting a reading of categorical unwaiveability. **Finally, the provision declares that "<u>any</u> " contract waiving the right to compensation due under Law 80 shall be null and void. The use of such a categorical term includes all contracts within its scope, rejecting any differentiation between pre- and post-termination contracts.** Since, as stated, we need not reach this issue at this stage, I leave the interpretation of Section 185i's scope to the Puerto Rico Supreme Court.

(Negrillas y énfasis suplidos). Íd., pág. 131 esc. 4 (citando a <u>Ruiz-Sanchez v. Goodyear Tire & Rubber Co.</u>, 717 F.3d 249, 256-257 (1st Cir. 2013) (Voto concurrente del <u>Circuit Judge</u>, Hon. Juan R. Torruella)).

[20]<u>Rivera Figueroa v. The Fuller Brush Co.</u>, 180 DPR 894, 906 (2011) (haciendo referencia a <u>Vélez Cortés v. Baxter</u>, supra, pág. 13).

Queda claro, entonces, que la renuncia a la indemnización convenida entre Ritz Carlton y el señor Feliciano constituye, precisamente, lo que el Art. 9 de la Ley Núm. 80 condena.

Por consiguiente, este Tribunal, en lugar de confirmar la desestimación decretada por los foros recurridos, debió declarar nulas las disposiciones del Acuerdo mediante las cuales se reconoce que el despido fue justificado y se renuncia a la indemnización provista por la Ley Núm. 80. Tras ello, debió decretarse la continuación del pleito con respecto a todas las causas de acción incoadas por el señor Feliciano, incluyendo aquellas que incluyen alegaciones de discrimen.

## III

Por los fundamentos anteriormente expuestos, respetuosamente disiento de la determinación emitida por este Tribunal.


                                    Luis F. Estrella Martínez
                                         Juez Asociado